STATE OF NORTH CAROLINA v. BILLY RAY JAMES

No. 93A87

(Filed 9 March 1988)

1. **Homicide § 12— indictment—defendant's county of residence not alleged—no error**

   A murder indictment which omitted the county of defendant's residence was not fatally defective because defendant's county of residence need not be proven at trial and N.C.G.S. § 15-144 states that it is not necessary to allege matter not required to be proved at trial in indictments for murder and manslaughter.

2. **Homicide § 12— murder—indictment—with force and arms omitted—not defective**

   A murder indictment which omitted the averment "with force and arms" was not fatally defective because N.C.G.S. § 15-144 does not prevail over the language of N.C.G.S. § 15-155.

3. **Indictment and Warrant § 7— assault and robbery—indictments—insufficient evidence—no grounds for quashing indictments**

   The trial court did not err by refusing to quash indictments for assault with a deadly weapon with intent to kill inflicting serious injury and robbery with a firearm on the basis of insufficient evidence to support the charges. Insufficiency of the State's evidence at trial is not a proper ground for quashing an indictment.

4. *Criminal Law § 43.2— sketch of crime scene—not prepared by witness—admissible*

   The trial court in a prosecution for first degree murder, assault, and robbery did not err by admitting for illustrative purposes a sketch of the crime area prepared by someone other than the testifying witness. As long as the witness is able to testify that an exhibit used for illustrative purposes is a fair and accurate representation of the scene it portrays, it is irrelevant that the witness did not prepare the exhibit; even assuming that the sketch was not properly authenticated and contained information beyond the witness's testimony, the State presented overwhelming evidence of defendant's guilt and defendant failed to show that there was a reasonable possibility that a different result would have been reached at trial had the error not been committed.

5. **Criminal Law § 43— photograph of victims—admissible for illustrative purposes**

   The trial court did not err in a prosecution for murder, robbery, and assault by admitting for illustrative purposes a photograph of the victims taken more than one year before the crimes were committed where the surviving victim testified that the photograph of himself and the deceased represented the way they looked a year before the crimes; the victim used the photograph to illustrate his testimony concerning his health prior to being shot, where he kept a tobacco tin like the one stolen from him, where the

deceased kept money in his bib overalls, and where the deceased kept his wallet; and the witness testified that the deceased was dressed in bib overalls on the day of his murder which looked exactly like the ones in the photograph.

**6. Constitutional Law § 30; Criminal Law § 43— discovery—photographs of victim—not furnished—admissible**

The trial court did not err in a prosecution for murder, robbery, and assault by receiving into evidence photographs of one victim which had not been furnished to defendant upon his motion for discovery. The State advised defendant ten months before trial that photographs of the crime scene were available at the Sheriff's Department, the only photographs not available at the Sheriff's Department were photographs taken during the autopsy of the deceased victim, and the State informed defendant that the pathologist had those photographs and would be bringing them to court. The State made the photographs available to defendant and fulfilled its obligation under N.C.G.S. § 15A-903(d).

**7. Criminal Law § 75.10— confession—voluntary**

The trial court did not err in a prosecution for murder, robbery, and assault by denying defendant's motion to suppress his inculpatory statement where defendant contended he was faced with a situation in which he could not have given a voluntary confession and the court found that defendant was advised of his constitutional rights prior to questioning; that defendant signed a waiver of his rights; that he was asked if he wanted anything or anyone in the interrogation room; that defendant never asked to have anyone present; that defendant was eighteen years old and had quit school in the ninth grade; and that defendant could read and that no promises or threats were made to him. N.C.G.S. § 15A-977(f).

**8. Robbery § 4.3— armed robbery—evidence sufficient**

The evidence of robbery by the use of a dangerous weapon was sufficient to withstand defendant's motions to dismiss all charges and set aside the verdict where the evidence, when considered in the light most favorable to the State, tended to show that defendant shot Buster Powell and robbed him while he lay mortally wounded on the floor.

**9. Assault and Battery § 14.4— assault—evidence sufficient**

The evidence of assault with a deadly weapon with intent to kill inflicting serious injury not resulting in death was sufficient to deny defendant's motions to dismiss all charges and set aside the verdict where defendant admitted that he carried a .22 caliber rifle into the building where the victims were working, that he fired the rifle at one victim, and that his accomplice was carrying a pistol in his pocket which he used to shoot the other victim; a medical doctor testified that victim Lowe suffered nine gunshot wounds and a firearms examiner testified that at least one bullet removed from Lowe was fired from the same semi-automatic rifle used to shoot the other victim; defendant admitted planning to shoot Powell because he did not want to be identified; other evidence of intent to kill included the viciousness of the assault and the deadly character of the weapon used; and there was evidence of

serious injury in that the victim Lowe was hospitalized as a result of the injuries received during the assault. N.C.G.S. § 14-32(a).

**10. Homicide § 21.5— murder—evidence sufficient**

> The trial court did not err by denying defendant's motion to dismiss the charge of first degree murder where defendant readily admitted that he planned the robbery and murder of Buster Powell, that he borrowed a .22 caliber rifle which he carried with him to Powell's house on the day of the shooting, that he shot and killed Powell to ensure that he would not be identified, that he reached into Powell's pocket and stole his money after he shot Powell, and an eyewitness tended to corroborate the confession. N.C.G.S. § 14-17.

APPEAL of right by the defendant from judgment imposing a life sentence for murder in the first degree entered by *Barefoot, J.*, at the 27 October 1986 Criminal Session of Superior Court, HALIFAX County. On 1 June 1987, the Supreme Court allowed the defendant's motion to bypass the Court of Appeals on his appeals of convictions for robbery with a dangerous weapon and assault with a deadly weapon with intent to kill inflicting serious bodily injury. Heard in the Supreme Court on 10 December 1987.

*Lacy H. Thornburg, Attorney General, by Reginald L. Watkins, Special Deputy Attorney General, for the State.*

*William F. Dickens, Jr., for the defendant-appellant.*

MITCHELL, Justice.

The defendant, Billy Ray James, was tried upon separate bills of indictment charging him with murder, assault with a deadly weapon with intent to kill inflicting serious injury and armed robbery. The jury returned verdicts finding the defendant guilty of first-degree murder on the theories of premeditation and deliberation and felony murder, robbery with a dangerous weapon and assault with a deadly weapon with intent to kill inflicting serious injury. After a sentencing hearing, the jury recommended a sentence of life imprisonment for first-degree murder. The trial court entered judgments on 6 November 1986 sentencing the defendant to consecutive terms of life imprisonment for first-degree murder, twenty-five years for robbery with a firearm and ten years for assault with a deadly weapon with intent to kill inflicting serious injury.

The evidence presented by the State tended to show that the defendant and Bernard Taylor rode bicycles to William Buster Powell's house on 22 November 1985. The State's eyewitness, Robert Lowe, positively identified the defendant and testified that the defendant and Taylor first came to Powell's house around noon on the day in question. The two men left and returned about fifteen or twenty minutes later to ask Powell if he had seen the defendant's brother. They left again but returned a short time later. At that time they shot and killed Powell and severely wounded Lowe.

Lowe testified that after he had been shot, he felt one of the men go through his pockets. Lowe remained silent for fear that they might kill him if they discovered he was alive. Lowe identified photographs of Powell taken before Powell's death and photographs of the crime scene taken after the shooting.

The day after the murder State's witness David L. Allsbrook, Jr. discovered two bicycles about fifteen to twenty feet from the roadside. Allsbrook notified local law enforcement officials. A search of the vicinity revealed, among other things, a yellow coin pouch, a .22 caliber rifle and a toboggan hat containing a pistol. During his testimony Allsbrook used a sketch of the area around the crime scene, prepared by another witness, to illustrate his testimony as to where the evidence was found.

Deputy Sheriff Ernie Newsome testified that he saw the defendant and Bernard Taylor on bicycles approximately two miles from the crime scene around lunch time on 22 November 1985.

Deputy Sheriff Joe Williams testified that when he arrived at the crime scene on 22 November 1985, Powell's body was lying face down. Williams examined the body and could detect no vital signs. Lowe, who had been shot, gave Williams a description of the assailants. Lowe said that one was light skinned and one was dark skinned. One of the assailants asked for his (the assailant's) brother, Sammy. Based on this information, Williams began a search of the area. The defendant and Bernard Taylor were apprehended as a result. Both men were advised of their rights when arrested.

Chief Investigator E. C. Warren testified at trial regarding his interrogation of the defendant. Warren and Investigator Cloyd again advised the defendant of his *Miranda* rights. The defendant waived the right to remain silent and confessed to the shooting of Buster Powell. The interrogation lasted between forty minutes to one hour. Warren testified that he did not make any promises or threats to the defendant.

Investigator Chuck Ward testified that he took photographs of the crime scene and gathered other physical evidence during his investigation. He described several photographs of the crime scene and used them to illustrate his testimony as to where he found bullet casings, coins and pieces of clothing. Ward testified that he found no money in Powell's pockets.

Dr. George Clark testified about the injuries Lowe received during the shooting incident. He stated that Lowe suffered nine bullet wounds, a broken arm, internal bleeding and a collapsed lung.

Dr. Lewis D. Levy, a pathologist, testified that seven bullets were recovered from Powell's body. He opined that Powell died from injuries inflicted by the gunshot wounds.

Robert Cerwin, a firearms examiner, testified regarding ballistics tests performed on bullets taken from Lowe and Powell. He identified certain bullets taken from Lowe and Powell as being fired from State's Exhibit #5, a .22 caliber Winchester semi-automatic rifle.

During the guilt-innocence phase, the defendant offered no evidence. The jury returned guilty verdicts on all charges.

[1]   At the conclusion of the evidence, the defendant moved to quash the indictments against him. The defendant first assigns as error the trial court's refusal to quash the murder indictment against him. He first argues that the murder indictment was fatally defective because it omitted the county of the defendant's residence.

"[A] bill of indictment may be quashed only for want of jurisdiction, irregularity in the selection of the grand jury, or for a fatal defect appearing on the face of the indictment." *State v. Allen,* 279 N.C. 492, 494, 183 S.E. 2d 659, 661 (1971). The general rule is

that an indictment for a statutory offense is facially sufficient if the offense is charged in the words of the statute, either literally or substantially, or in equivalent words. *State v. Gregory*, 223 N.C. 415, 27 S.E. 2d 140 (1943). Further, the quashing of indictments is not favored. *State v. Flowers*, 109 N.C. 841, 13 S.E. 718 (1891).

In the present case, the omission of the county of the defendant's residence from the murder indictment does not make the indictment fatally defective. N.C.G.S. § 15-144 specifically states that "[i]n indictments for murder and manslaughter, it is not necessary to allege matter not required to be proved on the trial; . . . ." Since the county of the defendant's residence need not be proved, the omission of this fact does not make the indictment fatally defective. N.C.G.S. § 15-144 (1983); *see also State v. Carswell*, 40 N.C. App. 752, 253 S.E. 2d 635 (county of residence need not be alleged in indictment), *cert. denied*, 297 N.C. 613, 257 S.E. 2d 220 (1979).

[2] The defendant next argues that the indictment does not properly charge him with murder because the essential averment "with force and arms" does not appear on its face. He contends that such an averment is required by N.C.G.S. § 15-144 in bills of indictment for homicide. In *State v. Corbett*, 307 N.C. 169, 175, 297 S.E. 2d 553, 558 (1982), this Court considered and rejected a similar argument with regard to an indictment for rape. We stated that: "[w]e do not read the statute [G.S. § 15-144.1, essentials for bill of rape] as either *requiring* the averment [with force and arms] or as expressing a legislative intent that the language in G.S. § 15-144.1(a) prevail over the express language in G.S. § 15-155 which states in effect that no judgment shall be stayed or reversed because of the omission of the words 'with force and arms' from the indictment." *Corbett*, 307 N.C. at 175, 297 S.E. 2d at 558.

The language of N.C.G.S. § 15-144.1(a) construed in *Corbett* is identical to the portion of N.C.G.S. § 15-144 cited in support of the defendant's argument. For the same reasons stated in *Corbett*, we conclude that N.C.G.S. § 15-144 does not prevail over the language of N.C.G.S. § 15-155. The omission of the phrase "with force and arms" does not, therefore, render the defendant's indict-

ment for murder fatally defective. This assignment of error is overruled.

[3]   The defendant next assigns as error the trial court's refusal to quash the indictments for assault with a deadly weapon with intent to kill inflicting serious injury and robbery with a firearm. The defendant made his motions in this regard at the close of the evidence, alleging insufficiency of the evidence to support the charges.

The challenged indictments are proper in form and nothing appears upon the face of either indictment indicating that it will not support a judgment. Insufficiency of the State's evidence at trial, even if established, is not a proper ground for quashing an indictment. *See State v. Allen*, 279 N.C. at 494, 183 S.E. 2d at 661. This assignment of error is overruled.

[4]   The defendant by his next assignment of error contends that the trial court erred in admitting, for illustrative purposes, a sketch of the crime area prepared by someone other than the witness whose testimony is illustrated. During the State's case-in-chief David L. Allsbrook, Jr. used a sketch of the area surrounding the crime scene to illustrate his testimony. The sketch had been prepared by another State's witness. The defendant objected to the use of the exhibit because the testifying witness had not prepared it, because the sketch was never identified as being a true and accurate representation of the area and because the sketch contained other information which was beyond the witness' testimony.

A contention that an exhibit was inadmissible because it was not prepared by the testifying witness has been previously considered and rejected by this Court with regard to photographic evidence. In *State v. Rogers*, 316 N.C. 203, 223, 341 S.E. 2d 713, 725 (1986), this Court held that photographs were admissible for illustrative purposes even though they were authenticated by someone other than the photographer. *Id.; see also State v. Dawson*, 278 N.C. 351, 180 S.E. 2d 140 (1971) (authenticated photographs were properly introduced to illustrate the testimony of "various witnesses"). The touchstone for admissibility of all exhibits is proper authentication. *State v. Rogers*, 316 N.C. at 223, 341 S.E. 2d at 725. As long as the witness is able to testify that an exhibit used for illustrative purposes is a fair and accurate

representation of the scene it portrays, it is irrelevant that the witness did not prepare the exhibit. The defendant's argument that the sketch was not properly admitted because the testifying witness did not prepare it must fail.

The defendant next contends that the trial court erred in admitting the sketch because it was not properly authenticated and contained information beyond the witness' testimony. Even if a defendant can demonstrate that the trial court erred in such a ruling, relief will not be granted absent a showing of prejudice. N.C.G.S. § 15A-1443(a) (1983). Assuming, *arguendo*, that the introduction of the sketch was erroneous, we conclude that the defendant has failed to show that, had the error not been committed, there was a reasonable possibility that a different result would have been reached at trial. *Id.*

At trial the State presented overwhelming evidence of the defendant's guilt. The State's eyewitness, Robert Lowe, testified that the defendant and an accomplice came to the victim's house three times on the day of the murder. On the third occasion, the defendant came in with a rifle in his hand and began shooting Buster Powell. His accomplice began shooting Lowe. After Lowe fell wounded on the floor, one of the men went through his pockets.

Other evidence tended to show that one bullet which hit Lowe came from the rifle used by the defendant. The State also introduced the defendant's confession in which he acknowledged plotting the murder and robbery of Buster Powell. The defendant confessed to shooting Powell "five times with my .22 rifle," then shooting him two or three more times as he was kneeling. After Powell was lying on the floor, the defendant took his money. In light of the overwhelming evidence of the defendant's guilt, we conclude the defendant has failed to carry his burden under N.C.G.S. § 15A-1443(a) of showing a reasonable possibility that a different result would have been reached at trial had the error assigned not been committed. *See, e.g., State v. Morgan*, 315 N.C. 626, 640, 340 S.E. 2d 84, 93 (1986). The defendant's assignment of error is overruled.

[5] In the defendant's next assignment of error, he contends that the trial court erred in admitting, over his objection, a photograph of the victims taken more than one year before the crimes

were committed. Generally, photographs may be admitted for illustrative purposes as long as they portray a scene with sufficient accuracy, even though they were not made simultaneously with the event to which the testimony relates. 1 Brandis on North Carolina Evidence § 34 (2d ed. 1982); *see, e.g., State v. Taylor,* 280 N.C. 281, 185 S.E. 2d 698 (1972). The trial court has discretion to exclude an exhibit if evidence as to its accuracy is conflicting or if significant changes occurred between the time of the event and the time the exhibit was prepared. *See, e.g., Fleming v. Atlantic Coast R.R.,* 236 N.C. 568, 73 S.E. 2d 544 (1952).

At trial, Robert Lowe testified that a photograph taken of him with Buster Powell represented the way they looked a year before the crimes. Lowe used the photograph to illustrate his testimony concerning his health prior to being shot, where he kept a tobacco tin like the one stolen from him, where Powell kept money in his bib overalls and where Powell kept his wallet. Lowe testified that Powell was dressed in bib overalls on the day of his murder which looked "exactly like the same ones" in the photograph. We conclude that the photograph was properly authenticated as accurately illustrating portions of Lowe's testimony, and that it was within the trial court's discretion to admit the photograph for illustrative purposes.

[6]  In the defendant's next assignment of error, he contends that the trial court erred in receiving into evidence photographs which had not been furnished the defendant upon his motion for discovery. These photographs were of Powell after he had been shot. The defendant contends that the trial court committed prejudicial error by admitting them into evidence. We disagree.

N.C.G.S. § 15A-903(d), which controls the disclosure of documents and tangible objects in criminal cases, provides:

Upon motion of the defendant, the court must order the prosecutor to permit the defendant to *inspect and copy* . . . photographs . . . which are within the possession, custody, or control of the State and which are material to the preparation of his defense, are intended for use by the State as evidence at the trial or were obtained from or belong to the defendant.

N.C.G.S. § 15A-903(d) (1983) (emphasis added). The statute does not require the State to furnish the defendant copies of photographs.

In the present case, the record shows that the State advised the defendant ten months before trial that photographs of the crime scene were available for inspection at the Halifax County Sheriff's Department, Detective Division. The only photographs that were not at the sheriff's department prior to the week of trial were the photographs taken during the autopsy performed on Powell's body. The State informed the defendant that the pathologist had those photographs and would be bringing them to court with him. We conclude that the State made the photographs available to the defendant and, in so doing, fulfilled its obligation under N.C.G.S. § 15A-903(d). This assignment of error is overruled.

[7] The defendant next assigns as error the trial court's denial of his motion to suppress the inculpatory statement he made to law enforcement officers after his arrest. Prior to trial the defendant filed a written motion to suppress in which he contended that his inculpatory statement was not voluntarily and understandingly made. In support of this assignment, the defendant argues that he was eighteen years old at the time of the statement, his only formal education consisted of completing the ninth grade, he was laboring under severe emotional strain because of the recent death of his parents, and he was questioned without the benefit of having a friend or family member present. The defendant contends he was faced with a situation in which he could not have given a voluntary confession.

N.C.G.S. § 15A-977(f) requires that the trial court make findings of fact and conclusions of law when ruling upon a motion to suppress. Such findings and conclusions must be determinative on the issue of voluntariness. *State v. Barfield*, 298 N.C. 306, 339, 259 S.E. 2d 510, 535 (1979), *cert. denied*, 448 U.S. 907, 65 L.Ed. 2d 1137 (1984). The trial court must determine whether the State has borne its burden of showing by a preponderance of the evidence that the defendant's confession was voluntary. The preponderance of the evidence test is not, however, to be applied by appellate courts in reviewing the findings of the trial court. *Id.* The find-

ings by the trial court are conclusive and binding upon appellate courts if supported by substantial competent evidence. *Id.*

In the present case, the trial court conducted a pre-trial *voir dire* hearing and made findings of fact and conclusions of law. The trial court found as facts that the defendant was advised of his constitutional rights prior to questioning, that the defendant signed a waiver of his rights, that he was asked if he wanted anything or anyone in the interrogation room, that the defendant never asked to have anyone present, that the defendant was eighteen years old, that he quit school in the ninth grade, that he could read and that no promises or threats were made to him. The record on appeal does not include the evidence presented during the *voir dire* hearing. Where the record is silent upon a particular point, the action of the trial court will be presumed correct. *London v. London*, 271 N.C. 568, 571, 157 S.E. 2d 90, 92 (1967); *State v. Dew*, 240 N.C. 595, 83 S.E. 2d 482 (1954). Therefore, we must assume that the trial court's findings of fact were supported by substantial competent evidence.

Based on its findings the trial court concluded, *inter alia*, that the defendant was fully advised of his constitutional rights, the defendant fully understood his rights before he made his confession, and that his confession was made freely, voluntarily and understandingly. The trial court's findings of fact support the conclusion that the defendant's confession was voluntary. This assignment of error is overruled.

By his next two assignments of error the defendant contends that the evidence was insufficient to withstand his motions to dismiss all charges and his motion to set aside the verdicts. In a criminal case the test of the sufficiency of the evidence is whether there is substantial evidence of each essential element of the crime charged and that the defendant was the perpetrator. *E.g., State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982). In ruling upon a motion to dismiss, the trial court must consider the evidence in the light most favorable to the State, allowing every reasonable inference to be drawn therefrom. *Id.*

[8] The defendant was charged with and convicted of the robbery of Powell by use of a dangerous weapon. The essential elements of robbery with a dangerous weapon are (1) the unlawful taking or attempted taking of personal property from a person or

in his presence (2) by use or threatened use of any firearms or other dangerous weapon, implement or means (3) whereby the life of a person is endangered or threatened. N.C.G.S. § 14-87 (1986); *State v. Allen*, 317 N.C. 119, 343 S.E. 2d 893 (1986); *State v. Beaty*, 306 N.C. 491, 293 S.E. 2d 760 (1982); *State v. Joyner*, 295 N.C. 55, 243 S.E. 2d 367 (1978).

In the present case the evidence, when considered in the light most favorable to the State, tended to show that the defendant shot Buster Powell and robbed him while he lay mortally wounded on the floor. One source of such evidence is the defendant's statement in which he admitted shooting Powell with a .22 caliber rifle and reaching into Powell's pocket and taking his money. The defendant's confession, without more, was substantial evidence of each of the essential elements to support his conviction for robbery of Powell with a dangerous weapon. The defendant's assignment of error as to robbery with a dangerous weapon is without merit and is overruled.

[9] The defendant also was charged with and convicted of an assault upon Lowe with a deadly weapon with intent to kill inflicting serious injury not resulting in death. In order to prove this crime under N.C.G.S. § 14-32(a), four essential elements must be shown: (1) assault; (2) with a deadly weapon; (3) with intent to kill; and (4) serious injury not resulting in death. The defendant contends that the State failed to present substantial evidence tending to show that he "assaulted [Lowe] with a deadly weapon inflicting serious injury with intent to kill." We do not agree.

In his confession which was introduced at trial, the defendant admitted that he carried a .22 caliber rifle into the building where Powell and Lowe were working, and that he fired the rifle at Buster Powell. The defendant stated that his accomplice was carrying a pistol in his pocket which he used to shoot Lowe. Dr. George Clark testified that Lowe suffered nine gunshot wounds. Robert Cerwin, a firearms examiner with the State Bureau of Investigation, testified that at least one bullet removed from Lowe was fired from the same .22 caliber Winchester semi-automatic rifle used to shoot Buster Powell. Taking this evidence in the light most favorable to the State, it is reasonable to infer that one of the shots that wounded Robert Lowe was fired by the defendant.

The defendant's intent to kill may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties, and other relevant circumstances. *State v. Thacker*, 281 N.C. 447, 189 S.E. 2d 145 (1972). There is ample evidence in the record from which a jury could reasonably infer that the defendant intended to kill Robert Lowe. Such evidence includes the defendant's inculpatory statement in which he admitted planning to shoot Powell because he did not want to be identified. Taken in the light most favorable to the State, the evidence supported a reasonable inference of the defendant's intent to kill anyone who could identify him. Other evidence tending to show such intent included the viciousness of the assault and the deadly character of the weapon used. The State's evidence was substantial evidence tending to show the defendant's intent to kill.

The term "serious injury" as employed in N.C.G.S. § 14-32(a) means physical or bodily injury resulting from an assault with a deadly weapon. Whether a serious injury has been inflicted must be determined according to the facts of the particular case. *State v. Jones*, 258 N.C. 89, 128 S.E. 2d 1 (1962). In the present case, the evidence tended to show that Lowe was shot at least one time by the defendant with a .22 caliber rifle. Lowe was hospitalized as a result of injuries received during the assault. We conclude that this evidence was sufficient to go to the jury on the element of "serious injury."

The State's evidence was sufficient to support a reasonable jury in finding that the defendant committed each of the elements of assault with a deadly weapon with intent to kill inflicting serious bodily injury not resulting in death. This assignment of error is overruled.

[10]   Finally, the defendant assigns as error the trial court's denial of his motion to dismiss the charge of first-degree murder of Powell. N.C.G.S. § 14-17 defines first-degree murder as:

A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate, and premeditated killing, or which shall be committed in the perpetration or attempted perpetration of any arson, rape or a sex offense, robbery, kidnapping, burglary, or other felony committed or attempted with

the use of a deadly weapon shall be deemed to be murder in the first degree . . . .

N.C.G.S. § 14-17 (1986).

In the present case, the defendant was convicted of first-degree murder on the theories of premeditation and deliberation and felony-murder. We conclude that there was substantial evidence to support the defendant's conviction for first-degree murder under either theory. The defendant, by his own confession, readily admitted that he planned the robbery and murder of Buster Powell, that he borrowed a .22 caliber rifle which he carried with him to Powell's house on the day of the shooting and that he shot and killed Powell to ensure he would not be identified. After he shot Powell, the defendant reached into Powell's pocket and stole his money. The testimony of eyewitness Robert Lowe tended to corroborate the defendant's confession. The trial court properly denied the defendant's motions for dismissal.

Neither do we find any merit in the defendant's argument that the trial judge erred in denying his motion to set aside the verdicts. This motion was directed to the sound discretion of the trial court. *State v. Boykin*, 298 N.C. 687, 259 S.E. 2d 883 (1979), *cert. denied*, 446 U.S. 911, 64 L.Ed. 2d 264 (1980). For the reasons stated above, the defendant has failed to show abuse of discretion.

The defendant's trial was free from reversible error.

No error.